Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
The Great American Tower
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
(602) 256-6718
(602) 256-6667 fax
stephen@montoyalawgroup.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tasha Kunzi, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Arizona Board of Regents, an Arizona public entity, Scott H. Decker, and Travis Pratt, | |
| Defendants. | |

For her Complaint against Defendants, Plaintiff alleges the following:

1. This is an action seeking to redress sexual harassment and retaliation in the workplace brought by Tasha Kunzi against her former employer, the Arizona Board of Regents, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended), and against her former supervisors at Arizona State University, Professors Scott Decker and Travis Pratt, under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(4), and 42 U.S.C. § 2000e.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. §

2000e-5(f)(3).

4. Ms. Kunzi is a citizen of the United States of America residing in Maricopa County, Arizona.

5. Ms. Kunzi is female in gender.

6. The Arizona Board of Regents is a state entity created by the State of Arizona with jurisdiction and control over all of the public universities of Arizona, including Arizona State University ("ASU").  See A.R.S. § 15-1625(B).

7. Defendant Scott Decker is employed by Arizona State University as a Professor and serves as the "Director" of ASU's School of Criminology and Criminal Justice.

8. Defendant Travis Pratt is employed by Arizona State University as a Professor in its School of Criminology and Criminal Justice.

9. Ms. Kunzi was employed by Arizona State University as a Research Assistant or Faculty Associate at all times material to this Complaint.

10. Ms. Kunzi first met Professor Travis Pratt when she was a graduate student in the Criminal Justice Department of Washington State University in Pullman, Washington in 2007.

11. Professor Pratt became Ms. Kunzi's mentor and chaired her Masters Thesis Committee at Washington State University.

12. Washington State University ultimately awarded Ms. Kunzi a Masters of Arts degree in Criminal Justice in May of 2009.

13. In the Fall of 2008, Professor Pratt left Washington State University to

become an Associate Professor at Arizona State University in ASU's School of Criminology and Criminal Justice.

14. Once at ASU, Professor Pratt encouraged Ms. Kunzi to apply to ASU's doctoral program in Criminology and Criminal Justice, and, based in part on his urging, she ultimately agreed to do so.

15. ASU subsequently accepted Ms. Kunzi into its doctoral program in Criminology and Criminal Justice in the Spring of 2009.

16. In April 2009, Ms. Kunzi traveled from her home in Washington State to Phoenix, Arizona for an ASU School of Criminology and Criminal Justice "meet and greet" for the School's faculty and accepted applicants to the School's doctoral program.

17. Although Professor Pratt was one of Ms. Kunzi's mentors and was already married at the time, Professor Pratt initiated a romantic relationship with Ms. Kunzi when he met with her in Phoenix, Arizona in April 2009.

18. Ms. Kunzi ultimately moved to Phoenix, Arizona to attend ASU as a doctoral student in ASU's School of Criminology and Criminal Justice in July 2009.

19. Soon thereafter, Ms. Kunzi obtained a job as a "Research Assistant" and/or Faculty Associate in the School of Criminology and Criminal Justice, where she worked with various faculty members in the School, including Professor Pratt.

20. In February 2010, Professor Pratt's wife discovered her husband's intimate, extramarital relationship with Ms. Kunzi and thereafter started to regularly

intimidate and harass Ms. Kunzi at work at the School of Criminology and Criminal Justice at ASU's downtown campus.

21. Ms. Kunzi consequently ended her personal relationship with Professor Pratt.

22. After Ms. Kunzi ended her relationship with Professor Pratt, he was upset with her and consequently started to harass her and retaliate against her at work and elsewhere.

23. For example, Professor Pratt frequently telephoned and "texted" Ms. Kunzi, although the communications were both uninvited and wanted.

24. Professor Pratt also told several of his colleagues in the School of his affair with Ms. Kunzi in a manner that was hurtful to Ms. Kunzi's standing at the School.

25. Professor Pratt would also contact Ms. Kunzi when he was inebriated and make threatening remarks towards Ms. Kunzi's new boyfriend.

26. Several of Professor Pratt's colleagues in the School, including the Director of the School, Professor Scott Decker, also started retaliating against Ms. Kunzi.

27. For example, Professor Decker started assigning Ms. Kunzi clerical work instead of the research projects that she was previously assigned.

28. Professor Decker also told several colleagues of Ms. Kunzi's former relationship with Professor Pratt and those colleagues subsequently stopped working with Ms. Kunzi.

29. Moreover, when Professor Pratt's wife started to come to the School and

harass Ms. Kunzi by staying for lengthy periods of time in an office right next to Ms. Kunzi's work desk, Professor Decker failed to respond to Ms. Kunzi's complaints of harassment.

30. Professor Decker and Professor Pratt also retaliated against Ms. Kunzi's new boyfriend, who was also a doctoral student in ASU's School of Criminology and Criminal Justice at the time, by subjecting his academic work to unjustified scrutiny and unfair evaluations.

31. Ms. Kunzi soon also learned that virtually no one on the School of Criminology and Criminal Justice faculty wanted to work with her on her Ph.D. dissertation and related course work.

32. Ms. Kunzi was consequently forced to leave both her job and the Ph.D. program at ASU in May 2011.

33. Even after Ms. Kunzi quit her job at ASU, Professor Pratt continued to harass her by repeatedly contacting her and driving by her house on his motorcycle.

34. Ms. Kunzi ultimately had to move her personal residence in order to avoid Professor Pratt.

35. The individual Defendants were acting under color of state law as agents of ASU at all times material to this Complaint.

36. Defendants' conduct as described above was intentional and deliberately indifferent to and in reckless disregard of Ms. Kunzi's federally protected rights under Section 1983 and Title VII.

37. Defendants' discriminatory treatment of Ms. Kunzi undermined her

otherwise excellent job performance and caused her to suffer lost wages and other income.

38. Defendants' discriminatory treatment of Ms. Kunzi also had a detrimental impact on her well-being and her physical and emotional health.

39. Based upon Defendants' discriminatory conduct as summarized above, Ms. Kunzi filed a Charge of Discrimination (EEOC Charge No. 540-2011-03263) against Arizona State University with the United States Equal Employment Opportunity Commission ("EEOC") on September 9, 2011. See attached Exhibit A.

40. Ms. Kunzi has satisfied all of the requirements for initiating this action by exhausting her administrative remedies with the EEOC and by filing this Complaint within ninety days of her receipt of a Right to Sue Letter from the Civil Rights Division of the United States Department of Justice. See attached Exhibit B.

41. Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, Ms. Kunzi hereby demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests the Court to:

    A.    Issue a judgment declaring that the conduct of Defendants as described above violated Ms. Kunzi's rights under Title VII of the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended, and the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended;

B. Issue preliminary and permanent injunctions against Defendants enjoining them from committing similar unlawful acts in the future;

C. Issue an injunction requiring Defendants to reinstate Ms. Kunzi with back-pay and all other attendant benefits, with interest;

D. Issue a judgment awarding Ms. Kunzi nominal, compensatory, and punitive damages against Defendants in amounts to be determined by the finder-of-fact at trial;

E. Issue a judgment awarding Ms. Kunzi reasonable costs and attorney fees against Defendants pursuant to 42 U.S.C. § 2000e and any other applicable law; and

F. Issue a judgment awarding Ms. Kunzi all other relief that is just and proper against Defendants under the circumstances.

Respectfully submitted this 30th day of October 2012.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012-2490
Attorney for Plaintiff

I hereby certify that on October 30, 2012, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

s/ Stephen Montoya