# EXHIBIT 1

Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
The Great American Tower
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
(602) 256-6718
(602) 256-6667 fax
stephen@montoyalawgroup.com

Attorney for Plaintiff

**Formatted:** Spanish (Spain-Traditional Sort)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tasha Kunzi, <br><br> Plaintiff, <br><br> v. <br><br> Arizona Board of Regents, an Arizona public entity, Scott H. Decker, and Travis Pratt, <br><br> Defendants. | No. CV 12-02327-PHX-JAT <br><br> **AMENDED COMPLAINT** |

For her Amended Complaint against Defendants, Plaintiff alleges the following:

1. This is an action seeking to redress sexual harassment and retaliation in the workplace brought by Tasha Kunzi against her former employer, the Arizona Board of Regents, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and against her former supervisors at Arizona State University, Professors Scott Decker and Travis Pratt, under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331,

1343(4), and 42 U.S.C. § 2000e.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

4. Ms. Kunzi is a citizen of the United States of America residing in Maricopa County, Arizona.

5. Ms. Kunzi is female in gender.

6. The Arizona Board of Regents is a state entity created by the State of Arizona with jurisdiction and control over all of the public universities of Arizona, including Arizona State University ("ASU"). See A.R.S. § 15-1625(B).

7. Defendant Scott Decker was employed by Arizona State University as a Professor and served as the "Director" of ASU's School of Criminology and Criminal Justice at all times material to this Complaint.

8. Defendant Travis Pratt was employed by Arizona State University as a Professor in its School of Criminology and Criminal Justice at all times material to this Complaint.

9. Ms. Kunzi was employed by Arizona State University as a Research Assistant or Faculty Associate at all times material to this Complaint.

10. Ms. Kunzi first met Professor Travis Pratt when she was a graduate student in the Criminal Justice Department of Washington State University in Pullman, Washington in 2007.

11. Professor Pratt became Ms. Kunzi's mentor and chaired her Masters Thesis Committee at Washington State University.

-2-

*Margin annotations:*
- Deleted: is
- Deleted: s
- Deleted:
- Inserted:
- Deleted: is

12. Washington State University ultimately awarded Ms. Kunzi a Masters of Arts degree in Criminal Justice in May of 2009.

13. In the Fall of 2008, Professor Pratt left Washington State University to become an Associate Professor at Arizona State University in ASU's School of Criminology and Criminal Justice.

14. Once at ASU, Professor Pratt encouraged Ms. Kunzi to apply to ASU's doctoral program in Criminology and Criminal Justice, and, based in part on his urging, she ultimately agreed to do so.

15. ASU subsequently accepted Ms. Kunzi into its doctoral program in Criminology and Criminal Justice in the Spring of 2009.

16. In April 2009, Ms. Kunzi traveled from her home in Washington state to Phoenix, Arizona for an ASU School of Criminology and Criminal Justice "meet and greet" for the School's faculty and accepted applicants to the School's doctoral program.

17. Although Professor Pratt was one of Ms. Kunzi's mentors and was already married at the time, Professor Pratt initiated a romantic relationship with Ms. Kunzi when he met with her at the ASU "meet and greet" in Phoenix, Arizona in April 2009.

18. Based in part on Professor Pratt's urgings, Ms. Kunzi ultimately moved to Phoenix, Arizona to attend ASU as a doctoral student in ASU's School of Criminology and Criminal Justice in July 2009.

19. Soon thereafter, Ms. Kunzi secured employment as a "Research Assistant" and Faculty Associate in ASU's School of Criminology and Criminal Justice,

Deleted: S
Deleted: obtained a job
Deleted: /or
Deleted: the

-3-

where she worked with various faculty members in the School, including Professor Pratt.

20. In February 2010, Professor Pratt's wife discovered her husband's intimate, extramarital relationship with Ms. Kunzi.

21. After Professor Pratt's wife discovered Professor Pratt's relationship with Ms. Kunzi, she started to regularly intimidate and harass Ms. Kunzi at work at the School of Criminology and Criminal Justice at ASU's downtown campus.

22. Ms. Kunzi consequently ended her personal relationship with Professor Pratt in February 2010.

23. After Ms. Kunzi ended her relationship with Professor Pratt in February 2010, he was upset with her and consequently started to harass her and retaliate against her at work and at her home.

24. For example, Professor Pratt frequently telephoned and "texted" Ms. Kunzi, although the communications were both uninvited and unwanted.

25. Professor Pratt also told several of his colleagues in the School of his affair with Ms. Kunzi in a manner that was hurtful to Ms. Kunzi's standing at the University.

26. Professor Pratt would also contact Ms. Kunzi when he was inebriated and make threatening remarks towards Ms. Kunzi's new boyfriend, whom she would later marry.

27. Professor Pratt would also appear at Ms. Kunzi's home without notice or invitation in order to harass Ms. Kunzi.

-4-

28. Several of Professor Pratt's colleagues in the School of Criminology and Criminal Justice, including the Director of the School, Professor Scott Decker, also started retaliating against Ms. Kunzi.

29. For example, Professor Decker started assigning Ms. Kunzi clerical work instead of the research projects that she was previously assigned.

30. Professor Decker also told several colleagues of Ms. Kunzi's former relationship with Professor Pratt and those colleagues subsequently stopped working with Ms. Kunzi.

31. Moreover, when Professor Pratt's wife started to come to the School and harass Ms. Kunzi by staying for lengthy periods of time in an office right next to Ms. Kunzi's work desk, Professor Decker failed to respond to Ms. Kunzi's repeated complaints of harassment.

32. In fact, Professor Decker failed to report Ms. Kunzi's complaints of harassment to the departments in the University charged with investigating complaints of discriminatory harassment at the University.

33. Ms. Kunzi soon learned that virtually no one on the School of Criminology and Criminal Justice faculty wanted to work with her on her Ph.D. dissertation and related course work.

34. On July 29, 2010, as a result of the ongoing harassment and retaliation against Ms. Kunzi in the School of Criminology and Criminal Justice, Ms. Kunzi was forced to withdraw from the doctoral program in the School and enroll in a doctoral program in another department in the University.

35. Although Ms. Kunzi withdrew from the doctoral program in the School of

[Margin annotations:
Deleted: ¶
Deleted: Professor Decker and Professor Pratt also retaliated against Ms. Kunzi's new boyfriend, who was also a doctoral student in ASU's School of Criminology and Criminal Justice at the time, by subjecting his academic work to unjustified scrutiny and unfair evaluations.
Deleted: also
Formatted: Bullets and Numbering
Deleted: Department
Deleted: the
Deleted: u
Inserted: the doctoral program in another department in the
Inserted: university.
Deleted: Department]

-5-

Criminology and Criminal Justice on July 29, 2010. Ms. Kunzi continued to teach courses in the School as a Faculty Associate until—as explained below—she was ultimately forced to withdraw entirely from the University in May 2011.

36. As a Faculty Associate in the School of Criminology and Criminal Justice, Ms. Kunzi remained under the supervision of the Chair of the School, Professor Decker.

37. Even after Ms. Kunzi was forced to withdraw from the School of Criminology and Criminal Justice, Professor Decker and Professor Pratt retaliated against Ms. Kunzi by disclosing the details of Ms. Kunzi's relationship with Professor Pratt and her withdrawal from the School to third-parties in a manner that hurt Ms. Kunzi's reputation.

38. In November 2010, based on ongoing harassment and retaliation from Professor Pratt, Ms. Kunzi complained to ASU Assistant Dean of Students Dana Newell and Associate Dean of the College of Public Programs Afsaneh Nahavandi of Professor Pratt's harassment and Professor Decker's failure to stop the harassment.

39. Notwithstanding Ms. Kunzi's complaints to Dean Newell and Dean Nahavandi, the harassment continued.

40. In December 2010, Ms. Kunzi confronted Professor Pratt with the fact that faculty members were gossiping and maligning her behind her back.

41. In response, Professor Pratt told Ms. Kunzi that he could "protect her" and that no one at ASU could "fuck with him," but that his ability to protect her

depended on her willingness to accept his protection.

42. In December 2010, Professor Pratt also told Ms. Kunzi that if she "took him back," the malicious gossip and retaliatory harassment would stop.

43. In December 2010, Professor Pratt also told Ms. Kunzi that he could "ruin an entire career with the click of a mouse," and that everyone at ASU was "afraid to mess with him."

44. Moreover, even after Ms. Kunzi was forced to withdraw from the School of Criminology and Criminal Justice, Professor Decker and Professor Pratt retaliated against Ms. Kunzi's fiancé, and future husband—who was also a doctoral student in ASU's School of Criminology and Criminal Justice at the time—by subjecting his academic work to unjustified scrutiny and unfair evaluations.

45. For example, Professor Decker withdrew as an advisor to Ms. Kunzi's fiancé's doctoral advisory committee.

46. Professor Pratt also participated in the grading of Ms. Kunzi's new husband's comprehensive doctoral examination, although he had previously indicated that he intended not to participate in the grading based on his animosity towards her husband.

47. Although Professor Decker could have and should have precluded Professor Pratt from participating in grading the examination, especially given the fact that Ms. Kunzi had already complained of Professor Pratt's animus and threats to her new husband, Professor Decker failed to do so.

48. Professor Decker also participated in the grading of Ms. Kunzi's new

-7-

husband's comprehensive doctoral examination.

49. As a result of Professors Decker and Pratt's retaliatory animus toward Ms. Kunzi, her husband failed his first attempt to pass his comprehensive doctoral examination in the Spring of 2012.

50. In addition, after Ms. Kunzi had already withdrawn from the doctoral program in the School of Criminology and Criminal Justice, Professor Pratt continued to harass her by texting her, calling her, and stalking her home.

51. Ms. Kunzi was ultimately forced to leave both her job and the Ph.D. program at ASU in May 2011 as a result of the ongoing harassment and retaliation set forth above.

52. Although Ms. Kunzi complained of Professor Pratt's harassment to Professor Decker, Dean Newell, and Dean Nahavandi, ASU never investigated her complaints or took any corrective measures to stop the harassment.

53. After Ms. Kunzi had withdrawn as a student at ASU and was no longer employed as a Faculty Associate by ASU, Professor Pratt and at least one other member of the School of Criminology and Criminal Justice called Ms. Kunzi's new employer and informed the employer of the details surrounding Ms. Kunzi's departure from the University.

54. Moreover, even after Ms. Kunzi quit her job at ASU and withdrew from ASU's doctoral program, Professor Pratt continued to harass her by repeatedly contacting her and driving by her house on his motorcycle.

55. Ms. Kunzi ultimately had to move her personal residence in order to avoid

Professor Pratt's ongoing harassment.

56. Both ASU and Professor Decker had notice that Professor Pratt was continuing to harass Ms. Kunzi, but nevertheless did nothing to stop the harassment even though Professor Pratt continued to be employed by the University and it violated the University's anti-discrimination policies for a professor to harass University employees and students.

57. Professor Pratt is still employed by ASU, is presently involved in another intimate relationship with one of his female graduate students, and is continuing to harass his other female students.

58. The individual Defendants were acting under color of state law as agents of ASU at all times material to this Complaint.

59. Defendants' conduct as described above was intentional and deliberately indifferent to and in reckless disregard of Ms. Kunzi's federally protected rights under Section 1983, Title VII, and Title IX.

60. Defendants' discriminatory treatment of Ms. Kunzi undermined her otherwise excellent job and academic performance and caused her to suffer lost wages and other income.

61. Defendants' discriminatory treatment of Ms. Kunzi also had a detrimental impact on her well-being and her physical and emotional health.

62. Based upon Defendants' discriminatory conduct as summarized above, Ms. Kunzi filed a Charge of Discrimination (EEOC Charge No. 540-2011-03263) against Arizona State University with the United States Equal Employment Opportunity Commission ("EEOC") on September 9, 2011. See attached

-9-

Deleted: and

Exhibit A.

63. After Ms. Kunzi filed her Charge of Discrimination with the EEOC, Professors Decker and Pratt continued to disparage her to third-parties inside and outside the School of Criminology and Criminal Justice.

64. Ms. Kunzi has satisfied all of the requirements for initiating this action by exhausting her administrative remedies with the EEOC and by filing this Complaint within ninety days of her receipt of a Right to Sue Letter from the Civil Rights Division of the United States Department of Justice. See attached Exhibit B.

65. Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, Ms. Kunzi hereby demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests the Court to:

A. Issue a judgment declaring that the conduct of Defendants as described above violated Ms. Kunzi's rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

B. Issue preliminary and permanent injunctions against Defendants enjoining them from committing similar unlawful acts in the future;

C. Issue an injunction requiring Defendants to reinstate Ms. Kunzi with back-pay and all other attendant benefits, with interest;

Deleted: Title VII of
Deleted: as amended, and
Deleted: as amended

-10-

D. Issue a judgment awarding Ms. Kunzi nominal, compensatory, and punitive damages against Defendants in amounts to be determined by the finder-of-fact at trial;

E. Issue a judgment awarding Ms. Kunzi reasonable costs and attorney fees against Defendants pursuant to 42 U.S.C. § 2000e and any other applicable law; and

F. Issue a judgment awarding Ms. Kunzi all other relief that is just and proper against Defendants under the circumstances.

Respectfully submitted this 1st day of March 2013.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012-2490
Attorney for Plaintiff

Deleted: 30th
Formatted: Superscript
Deleted: October 2012
Formatted: Spanish (Spain-Traditional Sort)

-11-

I hereby certify that on March 1, 2013, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Rebecca J. Herbst
Assistant Attorney General
1275 West Washington
Phoenix, Arizona 85007
Attorney for Defendants

David M. Villadolid
Burch & Cracchiolo, P.A.
702 East Osborn Road, Ste. 200
Phoenix, Arizona 85014
Attorneys for Defendant Pratt


s/ Stephen Montoya

*Deleted: October 30, 2012*

*Deleted: .*

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2011-03263 |

**Arizona Attorney General's Office, Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Tasha M. Kunzi | | |

Street Address                                  City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Arizona State University | More than 500 | 480-965-1971 |

Street Address                                  City, State and ZIP Code
Post Office Box 875612, Tempe, Arizona 85287

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                                  City, State and ZIP Code
ASU School of Criminology and Criminal Justice, 411 North Central Avenue, Suite 600, Phoenix, Arizona

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: February 2010    Latest: April 2011
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I first met Professor Travis Pratt when I was a graduate student in the Criminal Justice Department of Washington State University in Pullman, Washington in 2007. Mr. Pratt was then an Associate Professor in the Department. He soon became my mentor and chaired my Masters Thesis Committee. I was ultimately awarded my Masters of Arts degree in Criminal Justice from Washington State University in May of 2009.

In the Fall of 2008, Professor Pratt left Washington State University to become an Associate Professor at Arizona State University in the Department of Criminology and Criminal Justice. Once at ASU, Professor Pratt encouraged me to apply to ASU's doctoral program in Criminal Justice, and, based in part on his urging, I ultimately did so.

I was subsequently accepted into the Department's doctoral program, and in April 2009 I traveled from Washington to ASU for a Department "meet and greet" with Department faculty and accepted applicants to the Department's doctoral program. Although Professor Pratt was one of my mentors and was married, we started having a romantic relationship.

I ultimately moved to Phoenix to attend ASU in July 2009. Soon thereafter, I obtained a job as a "Research Assistant" in the Department of Criminology and Criminal Justice, where I worked with faculty members in the Department, including Professor Pratt.

In February 2010, Professor Pratt's spouse learned of my intimate relationship with Professor Pratt, and she started to regularly intimidate me at work. I consequently ended my relationship with Professor Pratt. He was unhappy that our relationship ended.

After I ended my relationship with Professor Pratt, he started to harass me and retaliate against me in the Department. For example, he frequently texted and emailed me and told several of his colleagues in the Department of the affair.

To make things worse, several of Professor Pratt's colleagues in the Department, including the Director of the Department, Professor Scott Decker, also started retaliating against me. For example, Professor Decker started assigning me clerical work instead of the research projects that I was previously assigned. I soon also learned that no one on the faculty wanted to work with me, much less help me obtain my Ph.D. I was consequently ultimately forced to leave my job in the Department in May 2011.

Even after I quit my job at ASU, Professor Pratt continued to harass and stalk me by repeatedly contacting me and driving by my house on his motorcycle. I ultimately had to move in order to avoid Professor Pratt.

I believe that I have been discriminated against because of my gender, female, and retaliated against after I complained of harassment and retaliation in the workplace at ASU, all in violation of my rights under Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| September 9, 2011     [signature]     Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:   Agency(ies) Charge No(s):
[ ] FEPA
[X] EEOC

Arizona Attorney General's Office, Civil Rights Division   and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

# EXHIBIT B

EEOC Form 161-B (11/09)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Tasha M. Kunzi

From: Phoenix District Office
3300 North Central Ave
Suite 690
Phoenix, AZ 85012

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2011-03263 | Lucy V. Orta, Enforcement Supervisor | (602) 640-5055 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Rayford O. Irvin* — JUL 3 1 2012

Rayford O. Irvin,
District Director

(Date Mailed)

Enclosures(s)

cc: Cynthia Jewett
Senior Associate General Cnsl
ARIZONA STATE UNIVERSITY
P.O. Box 875612
Arizona State University, AZ 85287

Stephen Montoya
MONTOYA JIMENEZ, P.A.
3200 North Central Avenue
Ste# 2550
Phoenix, AZ 85012