Thomas C. Horne
Attorney General

Rebecca J. Herbst, Bar No. 020491
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone:  (602) 542-8347
Facsimile:   (602) 542-7644
Rebecca.Herbst@azag.gov

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tasha Kunzi,<br><br>                    Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents, an Arizona public entity, Scott H. Decker, and Travis Pratt,<br><br>                    Defendants. | Case No:  2:12-cv-02327-JAT<br><br>**RESPONSE TO MOTION TO AMEND**<br><br>(Assigned to the Honorable James A. Teilborg) |

**I.    Introduction.**

This Court should deny Kunzi's Motion to Amend because it is futile. (Doc. 17.) In both her EEOC Charge and Complaint, Kunzi alleged that she had an affair with a married professor which ended after his wife discovered it.  She alleged that she was harassed and retaliated against after she ended the affair and that she ultimately had to withdraw from the Ph.D. program in Criminology and Criminal Justice.  As shown in the pending Motion for Summary Judgment (doc. 11), Kunzi's lawsuit is time barred because she did not timely file suit or her EEOC Charge.

Kunzi now attempts to save her time barred lawsuit by moving to amend to include allegations that occurred after she withdrew from the Ph.D. program.  Those allegations would fail as a matter of law because they were not included in her EEOC Charge, fail to state a claim, and are also time barred.  This Court should deny her motion to amend.

## II. Procedural Background.

Kunzi filed a charge with the EEOC on September 9, 2011 which contains the same allegations as her original Complaint. (Doc. 1, Exh. A). Kunzi alleged that she met Pratt in 2007 while she was a graduate student at Washington State University. (Doc. 1, ¶ 10; Exh. A.) Pratt was her mentor and chaired her Masters Thesis Committee. (*Id.*, ¶ 11; Exh. A.) Pratt was hired by Arizona State University in 2008, and after Kunzi received her Masters Degree in May 2009, she enrolled in a doctoral program at ASU. (*Id.*, ¶¶ 12-13, 18; Exh. A.)

Although Pratt was married, Kunzi alleged that they had an affair from April 2009 until February 2010; the affair ended after Pratt's wife discovered it. (*Id.*, ¶¶ 17, 20-21; Exh. A.) She alleged that Pratt harassed and retaliated against her after the affair ended. (*Id.*, ¶ 22; Exh. A.) She also alleged that Decker started retaliating against her by assigning her clerical work instead of research projects. (*Id.*, ¶¶ 26-27; Exh. A.) Kunzi alleged that Pratt and Decker told her colleagues of the affair. (*Id.*, ¶¶ 24, 28.)

Kunzi alleged that she "soon also learned that virtually no one on the School of Criminology and Criminal Justice faculty wanted to work with her on her Ph.D. dissertation and related course work." (*Id.*, ¶ 31; *see also* Exh. A.) With no other explanation or factual allegations, she alleged that she was "consequently forced to leave both her job and the Ph.D. program at ASU in May 2011." (*Id.*, ¶ 32.)

Decker and the Board moved for summary judgment because Kunzi's claims are time barred. (Doc. 11.) She withdrew from the Criminology and Criminal Justice program on July 29, 2010 but did not file her lawsuit until October 30, 2012. The statute of limitations on a Section 1983 claim is two years, thus, any Section 1983 claims that accrued before October 30, 2010 are time barred. Additionally, Kunzi did not timely file her EEOC Charge within 300 days of the date of her withdrawal. She filed her Charge on September 9, 2011, thus any claims prior to November 13, 2010 (300 days before she filed the Charge) fail.

Instead of substantively responding to Defendants' motion, Kunzi moves to amend. She indicates that she is curing Defendants' objections by providing dates for her allegations in paragraphs 21-31, but she actually proposes to include twenty-two new paragraphs alleging facts that ostensibly are not time barred and an entirely new Title IX claim. Kunzi wishes to allege that she was harassed and retaliated against after she withdrew from the Criminology and Criminal Justice Program in July 2010 but was working as a Faculty Associate until May 2011, and after she left ASU's employ. (Proposed Amended Complaint, Doc. 17-1, ¶¶ 35-53.) She claims that Decker and Pratt told others about her relationship with Pratt "in a manner that hurt [her] reputation" and that "faculty members were gossiping and maligning her behind her back." (*Id.*, ¶¶ 37, 40.) She claims that Decker and Pratt retaliated against her fiancé, who was also a graduate student in the program and had failed his first attempt to pass his comprehensive exams. (*Id.*, ¶ 44-49.) She claims that "Pratt continued to harass her by texting her, calling her, and stalking her home." (*Id.*, ¶ 50.) And she claims that Pratt and one other unnamed member of the school called her "new employer" and told them why she left ASU. (*Id.*, ¶ 53.)

### III.   Legal Argument.

####    A.   Legal Standard

This Court considers five factors in deciding whether to allow an amendment: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors justify exceptions to the general rule that leave to amend should be freely given. *Foman*, 371 U.S. at 182; Fed. R. Civ. P. 15(a)(2). This Court should deny Kunzi's motion because the proposed amendments are futile.

A motion to amend can be denied based solely on futility. *Nunes*, 375 F.3d at 808; *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile . . . or

3

would be subject to dismissal."); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."); *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) (explaining that "courts have discretion to deny leave to amend a complaint for 'futility,' and futility includes the inevitability of a claim's defeat on summary judgment). In assessing whether an amendment is futile, the standard of review is akin to that undertaken by a court in determining the sufficiency of a pleading challenged in a Rule 12(b)(6) motion to dismiss. *Miller*, 845 F.2d at 214.

### B. The Newly Proposed Title VII Allegations Would Fail.

As stated above, Kunzi seeks to include new allegations involving her role as a Faculty Associate after she withdrew as a graduate student from the Criminology and Criminal Justice program. (Proposed Amended Complaint, Doc. 17-1, ¶¶ 37-53.) As a Faculty Associate she was Pratt's co-worker, not student. Kunzi claims that Decker and Pratt told others about her relationship with Pratt "in a manner that hurt [her] reputation" and that "faculty members were gossiping and maligning her behind her back." (*Id.*, ¶¶ 37, 40.) She claims that Decker and Pratt retaliated against her fiancé, who was also a graduate student in the program and had failed his first attempt to pass his comprehensive exams. (*Id.*, ¶ 44-49.) And she claims that Pratt and one other unnamed member of the school called her "new employer" and told them why she left ASU. (*Id.*, ¶ 53.) Each of those allegations would fail as a matter of law under Title VII.

   1. <u>Kunzi's EEOC Charge is limited to events culminating in her withdrawal from the Ph.D. program. She failed to exhaust her administrative remedies regarding any claims relating to her post-withdrawal employment</u>.

As argued in Defendants' Motion for Summary Judgment, Kunzi did not include any facts in her EEOC Charge to suggest that she was harassed or retaliated against at work after she withdrew from the Ph.D. program in July 2010. (Doc. 11 at 5-6.) She simply alleged that she continued working for ASU until May 2011, but under *Delaware*

*State College v. Ricks,* the "mere continuity of employment" does not extend the statute of limitations. 449 U.S. 250, 257 (1980).

Kunzi wishes to amend to include new allegations that her coworkers gossiped about her affair with Pratt. (Proposed Amended Complaint, Doc. 17-1, ¶ 40.) She wishes to allege Decker and Pratt retaliated against her fiancé "by subjecting his work to unjustified scrutiny and unfair evaluations." (*Id.*, ¶¶ 44-49.) She wants to include the allegation that after she withdrew from the doctoral program, but presumably while she was still employed by ASU, "Pratt continued to harass her by texting her, calling her, and stalking her home."[1] (*Id.*, ¶ 50.) And she wishes to allege that Pratt and another member of the department told her new employer why she had left ASU. (*Id.*, ¶ 53.) This Court does not have subject-matter jurisdiction over these allegations because Kunzi did not include them in her EEOC charge, and therefore failed to exhaust her administrative remedies. These new allegations are also time barred.

To establish subject matter jurisdiction over a Title VII claim, a plaintiff must exhaust his or her administrative remedies by filing a timely charge with the EEOC. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). "Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Id.* (citation omitted). In determining whether the exhaustion requirement has been met, courts consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*

---

[1] In her Complaint, Kunzi had alleged that after she left ASU in May 2011, Pratt harassed her by contacting her and driving past her house on his motorcycle. (Doc. 1, ¶¶ 33-34.) Pratt moved for summary judgment in part because those allegations fail to show that he was acting under color of law, and as a result her Section 1983 claim against him failed. (Doc. 12 at 2-3.) Kunzi now alleges that the acts occurred while she was employed presumably to contend that Pratt was acting color of law.

5

1    Kunzi did not exhaust her administrative remedies as to any allegations involving
2 her post-withdrawal employment at ASU.  Kunzi's EEOC Charge does not state that she
3 had any problems at ASU after she withdrew from the Ph.D. program or that Pratt
4 continued to harass her after she was no longer a student.  (Proposed Amended
5 Complaint, Exh. A.)  The Charge does not mention her fiancé, that Decker and Pratt
6 improperly participated in grading her fiancé's comprehensive exam, or that her husband
7 failed his exam in spring 2012.  (*See id.,* ¶¶ 44-49; Exh. A.)  And because Kunzi filed
8 her EEOC Charge in September 2011, she could not have included subsequent
9 allegations relating to her fiancé failing his exam in spring 2012.  Kunzi's EEOC Charge
10 did not include any facts to suggest that she was retaliated against after she left
11 employment with ASU either.  The Charge does not mention her new employer, that
12 anyone from ASU called her new employer, or what harm was caused by such phone
13 call.  (*See id.*, ¶ 53.)  Based on the information included in Kunzi's EEOC Charge, the
14 EEOC did not have any reason to investigate any acts after she withdrew from the Ph.D.
15 program, her fiancé's education at ASU, or whether Kunzi's employment after ASU was
16 impacted.

17    Additionally, the Board had no notice of these new allegations.  "The
18 administrative charge requirement serves the important purposes of giving the charged
19 party notice of the claim and narrowing the issues for prompt adjudication and decision."
20 *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (quotations omitted).
21 Kunzi's charge was "narrow in scope," and focused solely on the alleged harassment and
22 retaliation leading her to withdrawal from the graduate program.  *See Epps v. Phoenix*
23 *Elem. Sch. Dist.*, 2009 WL 996308, at *3 (D. Ariz. 2009) (holding that the plaintiff could
24 not proceed on claims that were not contained in his EEOC Charge).  Although she
25 stated that she left employment in May 2011, she did not provide any facts to suggest
26 that she was harassed or retaliated against between July 29, 2010 (when she withdrew
27 from the program) and May 2011 (when she left employment).  Thus, this Court does not
28 have subject-matter jurisdiction over these claims.

Additionally, Kunzi's new claims are time barred because she failed to file a timely charge with the EEOC. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1998) (notice requirement treated as a statute of limitations). Kunzi was required to file a new or amended EEOC Charge on the post-withdrawal claims. Instead of doing so, she requested that the EEOC end its investigation and issue a right to sue letter. (Letter, 6/29/12, attached as Exhibit 1.) Thus, the post-withdrawal claims are time barred because she did not file a timely EEOC charge.

2.     Ostracism does not violate Title VII.

Kunzi's ostracism claim also fails as a matter of law. Although Kunzi admittedly had an affair with a married professor, she complains that her co-workers gossiped about her affair and "malign[ed] her behind her back." (Proposed Amended Complaint, doc. 17-1, ¶¶ 17, 20, 37, 40.) The Board is not liable for the damage to Kunzi's reputation caused by her affair. Nor is the Board required to prohibit Kunzi's co-workers from discussing the affair.

To prove retaliation, Kunzi must show that she (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) a causal connection between the two. *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986). Kunzi does not allege any facts to plausibly suggest that she suffered an adverse employment action because she had complained about Pratt. Instead, she complains that her co-workers gossiped about the affair and maligned her behind her back. Those are not adverse employment actions.

Ninth Circuit case law is clear—ostracism, badmouthing, and isolation are insufficient to establish adverse employment actions. *Manatt v. Bank of Amer.*, 339 F.3d 792, 803 (9th Cir. 2003); *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000; *Brooks v. City of San Mateo,* 229 F.3d 917, 929-930 (9th Cir. 2000); *McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir. 1999); *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir. 1998). Therefore, Kunzi's proposed amendment to include allegations that

her co-workers gossiped about her affair would fail as a matter of law and therefore is futile.[2]

### 3. Kunzi fails to state a claim for a hostile work environment.

The hostile work environment claim also fails as a matter of law. As stated above, the Title VII claims that accrued before November 13, 2010 are time barred. In an effort to save her time barred Title VII claims, Kunzi attempts to allege a hostile work environment claim. She wishes to include only one allegation: that after she withdrew from the doctoral program, "Pratt continued to harass her by texting her, calling her, and stalking her home." (Proposed Amended Complaint, Doc. 17-1, ¶ 50.) She provides no other facts or dates to support this allegation. Thus, this claim is futile because she fails to state a claim.

Kunzi's allegation is precisely the type of pleading the Supreme Court rejected in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007). *Iqbal* stressed that a plaintiff must plead sufficient factual allegations to withstand a motion to dismiss. 556 U.S. at 678. Although detailed factual allegations are not required, plaintiffs must plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint does not withstand a motion to dismiss if it simply offers "labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). Likewise, a complaint fails if it only alleges "naked assertions devoid of further factual enhancement." *Id.* (internal punctuation and quotations omitted).

*Iqbal* stressed two principles of particular application here. First, courts do not assume legal conclusions to be true. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

---

[2] Kunzi may contend that the gossip was so bad that she had to quit her job in May 2011 but that still fails to state a claim. If the underlying gossip cannot establish an adverse employment action, Kunzi cannot create one by terminating her employment. And as shown below, Kunzi cannot establish a constructive discharge claim.

Second, although "well-pleaded factual allegations" are assumed to be true, they must state a "plausible claim for relief." *Id.* To determine whether the complaint shows a plausible claim for relief, the court must "draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotations and punctuation omitted).

Kunzi alleges that she was harassed, but that is a legal conclusion that this Court does not take as true when deciding a motion to dismiss. *Id.* at 678. Legal conclusions "must be supported by factual allegations." *Id.* at 679. Kunzi failed to allege facts that plausibly suggest that she was harassed by Pratt after she withdrew from the graduate program. To prove a hostile working environment, Kunzi must show that: (1) she was subjected to verbal or physical conduct because of her gender; (2) the conduct was unwelcome; and (3) it was sufficiently severe or pervasive to alter the conditions of her employment. *Kang v. U. Lim Am. Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). Kunzi alleged nothing of the sort. She alleges that Pratt texted her, called her, and stalked her home, but does not include any facts to show that his conduct was sufficiently severe or pervasive to alter the conditions of her employment. (Proposed Amended Complaint, Doc. 17, ¶ 50.) It could be that Pratt called, texted, or drove past her home because he wanted to rekindle their romance. Kunzi failed to plausibly suggest that her employment was affected by severe and pervasive conduct.

 4. <u>Kunzi Also fails to state a claim for constructive discharge.</u>

Defendants cannot discern whether Kunzi intends to proceed on a constructive discharge theory. She alleges that she was "ultimately forced to leave her job . . . in May 2011 as a result of the ongoing harassment and retaliation set forth above." (Proposed Amended Complaint, Doc. 17-1, ¶ 51.) Kunzi, however, failed to allege facts to plausibly suggest a constructive discharge claim.

To prove a hostile work environment constructive discharge claim, Kunzi "must show working conditions so intolerable that a reasonable person would have felt

compelled to resign." *Penn. State Police v. Suders,* 542 U.S. 129, 147 (2004).  As argued above, Kunzi did not allege facts to show that Pratt's behavior was severe or pervasive.  She certainly did not allege the additional facts required to show that her working conditions were "so intolerable" that she was forced to resign.  In fact, Kunzi did not even allege that she had resigned because she did not.  Kunzi was offered a "one semester appointment" to teach two classes in the spring 2011 semester.  (Offer letter, 12/10/10, attached as Exhibit 2.)  The offer letter for that appointment indicated that it would end in May 2011.  (*Id.*)

### C. The New Title IX Claim Is Futile.

Kunzi's original complaint did not state a Title IX claim.  She only stated claims under Title VII and Section 1983 and sought damages for lost wages and other income.  (Doc. 1, ¶¶ 1, 36-37, 41.)  Although her Motion to Amend references only the addition of dates to her Complaint, she also proposes to add a Title IX claim (Doc. 17, Proposed Amended Complaint, doc. 17-1, ¶¶ 1, 59-60.)   The proposed new claim is futile.[3]

Title IX provides:  "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Kunzi does not clearly state her newly proposed Title IX claim.  The Board is unsure whether Kunzi wishes to assert this claim based on her July 2010 withdrawal from the Ph.D. program in Criminology and Criminal Justice, her December 2010 withdrawal from the Education program, or as an employment discrimination claim.  Each of the claims would fail.

#### 1. The statute of limitations on Title IX claims is two years.

Like Section 1983 claims, the statute of limitations for a Title IX claim is borrowed from the State's personal injury statute.  *Stanley v. Trustees of the Cal. State.*

---

[3] Defendants presume that Kunzi intends to bring this claim only against the Board because Title IX does not provide a cause of action against school officials. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

1   *Univ.*, 433 F.3d 1129, 1134-36 (9th Cir. 2006).  In Arizona, a two year statute of
2   limitations applies in those cases.  A.R.S. § 12-542.
3       Kunzi proposes to allege that she withdrew from the Ph.D. program in
4   Criminology and Criminal Justice on July 29, 2010 to enroll in a graduate program in a
5   different department.  (Proposed Amended Complaint, doc. 17-1, ¶ 34.)  Kunzi enrolled
6   in a Masters of Education program, majoring in Special Education.  (Withdrawal form,
7   attached as Exhibit 3.)  Kunzi states no other allegations relating to her enrollment in that
8   program.  She does not allege that her studies in the Special Education program were in
9   any way affected by the alleged harassment and retaliation in the School of Criminology.
10  Kunzi withdrew from the Master of Education program on December 12, 2010.  (*Id.*)
11      Kunzi filed this lawsuit on October 30, 2012 and her Motion to Amend on March
12  1, 2013.  Both occurred more than two-years after she withdrew from the Criminology
13  and Criminal Justice program on July 29, 2010.  Thus, that claim would be time barred.
14      If Kunzi intends to make a Title IX claim for her withdrawal from the Special
15  Education program, it too would be time barred.  Kunzi's amendment to add that claim
16  does not relate back to her original Complaint.  In determining whether a new claim
17  relates back to an original complaint, this Court must decide whether the new claim "will
18  likely be proved by the same kind of evidence offered in support of the original
19  pleading."  *Percy v. San Fran. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988).  Kunzi's
20  Complaint related only to her studies and employment within the School of Criminology
21  and Criminal Justice.  It made no mention of enrolling in another program or any
22  problems within that program.  For Kunzi to now include a claim involving the Special
23  Education program, different evidence will be required.  Thus, the claim does not relate
24  back. Kunzi moved to amend on March 1, 2013 but she had withdrawn from the
25  program more than two-years earlier on December 12, 2010.  Thus, the claim is time
26  barred.

1    2.    <u>Kunzi cannot file a Title IX employment discrimination claim to avoid the administrative requirements of Title VII.</u>

Although Title IX also prohibits employment discrimination, this Court should not permit her to simply rename her claim to avoid the administrative exhaustion requirements of Title VII. It does not appear that the Ninth Circuit has ruled on this issue, but the Fifth and Seventh Circuits have held that employees of educational institutions may bring employment discrimination claims only under Title VII and may not circumvent its administrative requirements. *Lakoski v. James,* 66 F.3d 751, 753-58 (5th Cir. 1995); *Waid v. Merrill Area Public Schools,* 91 F.3d 857, 861-62 (7th Cir. 1996); *see also Morris v. Wallace Community College-Selma,* 125 F.Supp.2d 1315, 1342-1343 (S.D.Ala. 2001);*Vega v. State Univ. of New York Board of Trustees,* 2000 WL 381430 at 3 (S.D.N.Y.2000); *Blalock v. Dale County Bd. of Educ.,* 84 F.Supp.2d 1291, 1297-99 (M.D.Ala.1999); *Hazel v. Sch. Bd. of Dade County,* 7 F.Supp.2d 1349, 1353-54 (S.D.Fla.1998); *Gibson v. Hickman,* 2 F.Supp.2d 1481, 1483-84 (M.D.Ga.1998); *Cooper v. Gustavus Adolphus College,* 957 F.Supp. 191, 193-94 (D.Minn.1997). Thus, this Court should hold that Title VII preempts a Title IX employment discrimination claim.

**D.    The Section 1983 Claim against Decker Would Fail.**

To state a claim under Section 1983, Kunzi "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. Thus, Kunzi had to plead that Decker, a state actor, acting under color of state law, deprived her of a right secured by the Constitution. *Paul v. Davis*, 424 U.S 693, 696-97 (1976). "No matter whether [Kunzi's] theory of constitutional injury is founded in the First Amendment right to petition for redress of grievances, property and liberty interests in continued employment, or privacy," she must show that Decker deprived her of a federally protected right. *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1044 (9th Cir. 1994). Her proposed amendment fails because she does not allege that Decker deprived her of a federally protected right.

1    Kunzi alleges that Decker disclosed the details of her relationship with Pratt and
2 her withdrawal from the program "in a manner that hurt her reputation." (Proposed
3 Amended Complaint, Doc. 17-1, ¶ 37.) Damage to reputation alone, however, does not
4 create a Section 1983 claim. To show a deprivation of a federally protected right, Kunzi
5 had to allege that she suffered a tangible injury in addition to the damage to her
6 reputation. *Paul,* 424 U.S. at 701. The Supreme Court has made clear, however, that
7 "[d]efamation, by itself, is a tort actionable under the laws of most states, but not a
8 constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Here, Kunzi
9 does not even allege that Decker defamed her. She simply alleges that he told others
10 about her affair. That is not a constitutional violation.
11    Any attempt by Kunzi to classify this as a First Amendment retaliation claim does
12 not change the analysis. "Mere threats and harsh words are insufficient" to show a
13 retaliation claim. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998). In
14 *Nunez,* the plaintiff alleged that in retaliation for his internal complaints about the
15 promotions process, his supervisors scolded him and threatened to transfer or fire him.
16 *Id.* at 874. This Court rejected the claim noting that it "would be the height of irony,
17 indeed, if mere speech, in response to speech, could constitute a First Amendment
18 violation." *Id.* at 875. Similarly, Decker's alleged disclosure of Kunzi's affair is mere
19 speech and not actionable as retaliation.
20    Kunzi may argue that she wishes to sue Decker under Section 1983 claim because
21 he failed to stop the alleged harassment; but that too fails to state a claim. Kunzi only
22 proposed allegations that, at best would show that Decker was indifferent to any alleged
23 harassment.[4] (Proposed Amended Complaint, Doc. 17-1, ¶¶ 32, 38, 52, 56.) A Title IX
24 claim can be established by proving the defendants were deliberately indifferent to
25 sexual harassment. *Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274, 290-91 (1998).

---

[4] Kunzi only alleges that she "complained" to Decker about harassment. She does not allege any facts about her alleged complaints, such as what she told him, when she told him, what details she gave him. If her "complaint" to Decker was as bare-bones as her harassment allegations in the Proposed Amended Complaint, Decker could have reasonably believed that Kunzi was simply complaining about an affair gone wrong.

However, the equal protection clause is violated only by intentional discrimination. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). A plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* Purposeful discrimination is "more than intent as volition or intent as awareness of consequences." *Iqbal*, 556 U.S. at 675. Kunzi failed to allege any facts to plausibly suggest that Decker intentionally discriminated against her.

## IV.   CONCLUSION.

Kunzi did not timely file her lawsuit. Her attempt to save her lawsuit by moving to amend to include ostensibly timely allegations fails. Her proposed amendments are futile and this Court should deny her motion.

Respectfully submitted this 15th day of March, 2013.

Thomas C. Horne
Attorney General

s/Rebecca J. Herbst
Rebecca J. Herbst
Assistant Attorney General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 15th day of March, 2013:

Stephen Montoya
Montoya, Jimenez & Pastor, PA
The Great American Tower
3200 North Central Avenue, Ste. 2550
Phoenix, AZ 85012
Attorneys for Plaintiff

s/D. Anderson
#3131925